# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 1:08CR00024 |
| v. | ) **OPINION AND ORDER** |
| | ) |
| ANTHONY EUGENE DUTY AND | ) By: James P. Jones |
| ROBIN MARIE DAVIS, | ) Chief United States District Judge |
| Defendants. | ) |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Michael A. Bragg, Bragg Law, PLC, for Defendant Anthony Eugene Duty, and Henry S. Keuling-Stout, Keuling-Stout, P.C., for Defendant Robin Marie Davis.*

In this criminal case, the defendants, convicted by a jury of being participants in a drug trafficking conspiracy, have filed post-trial motions seeking a new trial or acquittal. For the reasons that follow, I will deny the motions.

I

The defendants Anthony Eugene Duty and Robin Marie Davis were convicted by the jury in a joint trial of knowingly conspiring with others to distribute and to possess with intent to distribute fifty grams or more of crack cocaine in violation of 21 U.S.C.A. § 841(a)(1) (West 1999). At trial, the government contended that the

defendants had served as low-level street distributors in a large, multifaceted drug trafficking conspiracy. Duty admitted that he had abused illicit drugs, but denied that he had participated in the drug conspiracy. Davis argued that the conspiracy she purportedly had joined was not the conspiracy alleged in the Indictment.

In their post-trial motions currently before the court, Duty and Davis offer several arguments for relief. Duty contends that it was improper for the court to engage in a colloquy with the jury foreman and to allow the government to use a prior statement during redirect examination of its own witness.[1] Davis argues that the government presented insufficient evidence for the jury to find beyond a reasonable doubt that she had knowledge of and participated in the conspiracy alleged in the Indictment and that fifty grams or more of crack was attributable to her.

These motions have been briefed by both defendants and are now ripe for decision.[2]

---

[1] Duty has also moved to Arrest Judgment pursuant to Federal Rule of Criminal Procedure 34. Under Rule 34, the court must arrest judgment only if: "(1) the indictment or information does not charge an offense; or (2) the court does not have jurisdiction of the charged offense." Fed. R. Crim. P. 34(a). Because Duty makes neither argument, that motion will be denied.

[2] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

- 2 -

II

Finding that the court erred neither when it engaged in a colloquy with the jury foreman nor when it permitted the government to ask its witness about a prior statement during redirect examination, I will deny Duty's Motion for a New Trial.

A

Duty cites a colloquy between the court and the jury foreman as prejudicial error.

While the jury was deliberating, it submitted a handwritten note to the court that said, "Please look at No. 17 'one may become a member of a conspiracy['] Next Page Line 5. Also, a person who has no knowledge of a conspiracy, but who happens to act in . . . . . does not thereby become a conspirator[.]" (Jury Question Number 3 (ellipsis in original).)

Outside the presence of the jury, the court gave counsel a copy of the question and stated: "Frankly, I don't understand what the question is. So, unless counsel has a better idea, I propose to bring the jury in and tell them that." (Trial Tr. vol. 4, 2, Oct. 10, 2008.) Counsel for both the government and the defendants did not respond. The jury entered the courtroom and the following exchange occurred:

> THE COURT: . . . I received a note, but I'm not sure what the question is. Apparently it pertains to instruction number 17 which has to do with conspiracy, and it references the sentence that says, "Also, a person who

has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of the conspiracy does not thereby become a conspirator." But I don't know what the question is. So, if you want - -

THE FOREMAN: What we're asking on that, sir, on page 17 in that paragraph it says one thing, and then the next page on down it states that they don't become a conspirator, and we're asking the interpretation between the two.

THE COURT: Well, I think what you're referring to is the provision that says, "One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all of the other alleged conspirators." In other words, that says that a member, that you may be a conspirator even though you don't know all of the details of the scheme, or the identities of all of the other alleged conspirators.

And the alleged provision says if you have no knowledge of a conspiracy, but you just happen to act in a way that advances a purpose of the conspiracy, that that does not mean that you are a conspirator.

I do not know if I can explain it any better than that. You'll just have to review it. But it is not inconsistent, is what I'm telling you. If you'll continue your deliberations, please.

(*Id.* at 2-3.)

Duty maintains that the court's response to the foreman in open court denied him an opportunity to comment on the jury's confusion and intruded on the jury's deliberations. I disagree.

As the Fourth Circuit has explained, "[i]t is well established that the necessity, extent and character of any supplemental instructions to the jury are matters within

- 4 -

Case 1:08-cr-00024-JPJ-PMS   Document 1284   Filed 01/13/09   Page 4 of 16   Pageid#: 8629

the sound discretion of the district court." *United States v. Horton*, 921 F.2d 540, 546 (4th Cir. 1990) (citations omitted); *see also* 26 James Wm. Moore, *Moore's Federal Practice*, § 630.33[1] (3d ed. 2008) ("The court has broad discretion in determining whether supplemental instructions are necessary and the extent to which they should be given."). However, "an extended colloquy might precipitate disclosure of jury deliberations or . . . lead the judge into crossing the line between instructing the jurors and participating in their decisionmaking. In addition, immediate responses to oral questions might foreclose the opportunity for counsel to comment on *new* matters . . . ." *United States v. Ulloa*, 882 F.2d 41, 45 (2d Cir. 1989) (emphasis added).

Both the foreman's statement and the handwritten note to the court demonstrated that the jury had considered two sentences in instruction seventeen inconsistent. Duty commented on neither. Though it may have been unwise for Duty to immediately object to the court's response in front of the jury, he did not object after the jury left the courtroom.

Duty claims that he would have suggested "that the Court . . . offer no further instructions" if he had been afforded an opportunity to do so. (Def.'s Mot. for New Trial and to Arrest J. 2.) The court did just that—it read part of the instruction for a

- 5 -

Case 1:08-cr-00024-JPJ-PMS   Document 1284   Filed 01/13/09   Page 5 of 16   Pageid#: 8630

second time without further explanation.³  It stated that the two sentences were not inconsistent, but that neither suggests a specific reading nor implies that the jury should apply the law in any particular manner.

B

Duty also claims that the court erred by allowing the government to use a prior statement on redirect examination of its own witness.

The government offered the testimony of codefendant Gregory Meade in its case-in-chief against Duty.  On direct, the government attorney asked Meade about Duty's car-repair garage on Volunteer Parkway in Bristol, Tennessee.  Meade testified that he had seen Derrick Evans, a leader of the conspiracy, sell cocaine there.  The following testimony then ensued:

> Q    Did you ever see [defendant] Tony [Duty] involved in any transaction with Derrick Evans, or anybody else?
>
> A    No, I did not.

---

³ The relevant portion of the instruction provides:

> One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all of the other alleged conspirators. . . . Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of a conspiracy does not thereby become a conspirator.

(Instruction No. 17.)

- 6 -

Case 1:08-cr-00024-JPJ-PMS   Document 1284   Filed 01/13/09   Page 6 of 16   Pageid#: 8631

> Q   Did you ever buy crack cocaine from Tony Duty?
>
> A   No, sir, I did not.

(Trial Tr. vol. 1, 157, Oct. 7, 2008.)  On redirect, the government attorney asked:

> Q   You've been asked about an interview you gave on August 5th of 2008.  Do you remember talking about Tony Duty and Derrick Evans during that interview?
>
> A   Yes.
>
> Q   Do you remember telling the agents that you had actually purchased cocaine from Tony Duty?

(*Id.* at 173.)  Before Meade could answer, Duty objected, arguing that the question in regard to Meade's prior statement on August 5, 2008 was improper impeachment and improper bolstering of the witness, and moved for a mistrial.

The court overruled the objection and denied the motion for a mistrial.  It explained that the government could impeach its own witness, and although the government had neglected to inquire about the prior statement on direct, Duty would suffer no prejudice if the government raised it during redirect.

Counsel for the government repeated the question about the prior statement, and Meade explained that he had purchased cocaine from Duty at a garage on Mary Street, but not at the garage on Volunteer Parkway discussed during direct.

- 7 -

Duty maintains that the court erred in admitting this testimony because the prior statement had been consistent with Meade's testimony on direct. He argues that the question to Meade about the prior statement was not only improper impeachment, but also improper bolstering of Meade's credibility. I disagree.

The government's question about Meade's prior statement challenged his credibility. Under the Federal Rules of Evidence, "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." Fed. R. Evid. 607. To do so, a party may use a prior statement that is inconsistent with the witness's testimony at trial. *See United States v. Ince*, 21 F.3d 576, 579 (4th Cir. 1994). A prior statement "is inconsistent if under any rational theory it might lead to any relevant conclusion different from any other relevant conclusion resulting from anything the witness said." 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 613.04[1] (2d ed. 2008). On direct, Meade denied that he had bought drugs from Duty. That testimony conflicted with the statement he made on August 5, 2008, that Duty had sold him small quantities of cocaine.

However, where the government seeks to impeach its own witness with a prior inconsistent statement, the court must ensure that the government has not "employed impeachment by prior inconsistent statement 'as a mere subterfuge to get before the

- 8 -

jury evidence not otherwise admissible.'"[4]  *Ince*, 21 F.3d at 579 (quoting *United States v. Morlang*, 531 F.2d 183, 190 (4th Cir. 1975)).

But this case does not raise that concern.  The testimony in reference to Meade's prior statement was "otherwise admissible."  *Ince*, 21 F.3d at 579 (internal quotes omitted).  Duty's attorney asked Meade on cross whether he "told anybody . . . when [he was] faced with charges in Bristol what [he] said [at trial] about Tony Duty[,]" and whether he "waited until now to make . . . statements regarding Tony Duty[.]"  (Trial Tr. vol. 1, 172, Oct. 7, 2008.)

In essence, Duty insinuated that Meade had fabricated his testimony at trial to obtain consideration in his sentence for his past and pending drug charges.  Meade had given a prior statement about Duty, and the content therein rebutted the implication that Meade withheld incriminating information about Duty until trial, or that Meade had testified under an improper influence or with an improper motive. *See* Fed. R. Evid. 801(d)(1); Weinstein & Berger, *supra*, § 607.09[2](a) (stating that "[W]hen . . . testimony is attacked as a fabrication of recent date or recent contrivance, evidence of prior consistent statements is admitted by all American

---

[4] To do so, the "court must apply Federal Rule of Evidence 403 and weigh the testimony's impeachment value against its tendency to prejudice the defendant unfairly or to confuse the jury."  *Ince*, 21 F.3d at 580.

authorities when relevant to rebut the charge."). Testimony about the prior statement was admissible for purposes other than impeachment.[5]

For these reasons, the testimony in reference to the prior statement was properly admitted.

Because I find that the court erred in neither instance cited by Duty, his Motion for New Trial will be denied.

III

The evidence adduced at trial was sufficient for a reasonable jury to convict Davis beyond a reasonable doubt and to attribute fifty grams or more of crack to her.

---

[5] Assumed in Duty's objection is the contention that the government's examination of Meade's prior statement during redirect exceeded the scope of cross-examination and was therefore improper. This claim is without merit. During his initial cross examination of Meade, Duty asked, "Had you given an interview back in August 5th of this year to Mr. Kimbril, Tennessee Bureau of Investigation, do you remember meeting with him?" (Trial Tr. vol. 1, 159, Oct. 7, 2008.) That same August 5th meeting generated the prior statement employed by the government. Moreover, the court has discretion to allow redirect on issues that had not been previously introduced. *See United States v. Starling*, No. 05-4981, 2007 WL 685234, at *5 (4th Cir. Mar. 7, 2007) (unpublished) (citing I Kenneth S. Broun, *McCormick on Evidence* § 32 (6th ed. 2006) ("[U]nder his general discretionary power to vary the normal order of proof, the judge may permit the party to bring out on redirect examination relevant matters which through oversight he failed to elicit on direct."); 81 Am. Jur. 2d *Witnesses* § 740 (2004) (acknowledging the "court's discretion to allow on redirect examination questioning as to matters which properly should have been brought out on direct examination")).

Therefore, I will deny both her Motion for Judgment of Acquittal and her Motion for New Trial.

The conviction must be sustained if, viewed in the light most favorable to the government, there is substantial evidence to support it. *See Glasser v. United States*, 315 U.S. 60, 80 (1942). I must determine "whether any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. Capers*, 61 F.3d 1100, 1107 (4th Cir. 1995) (alterations and internal quotes omitted).

Though a motion for a new trial may also be based on insufficient evidence, "a court should exercise its discretion to grant a new trial sparingly, and . . . it should do so only when the evidence weighs heavily against the verdict." *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003) (internal quotes omitted).

Davis argues that there was insufficient evidence to convict her for involvement in the single drug conspiracy charged in the Indictment. To prove a conspiracy, "'the government must show, first, that a conspiracy existed; then, that the defendant had knowledge of the conspiracy; and finally, that the defendant voluntarily became a part of the conspiracy.'" *Capers*, 61 F.3d at 1107 (quoting *United States v. Bell*, 954 F.2d 232, 236 (4th Cir. 1992)).

As the Fourth Circuit has explained, "a single conspiracy exists when the conspiracy had the same objective, it had the same goal, the same nature, the same geographic spread, the same results, and the same product." *Id.* (internal quotes omitted). Furthermore, "'one may be a member of a conspiracy without knowing its full scope, or all its members, and without taking part in the full range of its activities.'" *Id.* at 1108 (quoting *United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir. 1993)). Indeed, there must only be "a slight connection between the defendant and the conspiracy to support conviction." *United States v. Brooks*, 957 F.2d 1138, 1147 (4th Cir. 1992).

Davis contends that the evidence established two different drug conspiracies governed by two different individuals: Marcus Watkins and Derrick Evans. According to this theory, the Derrick Evans organization operated in Burlington, North Carolina, Bristol, Virginia, and Bristol, Tennessee, while the Marcus Watkins organization operated in Abingdon, Virginia. Davis claims that though the evidence might have shown that she was involved with the Marcus Watkins organization, it did not demonstrate that she was a member of the Derrick Evans organization.

Davis relies on the fact that Evans never testified that Watkins had worked with the Derrick Evans organization. She also relies on testimony from Watkins that the two organizations were at one time separate and distinct.

I find that there was substantial evidence from which the jury could conclude beyond a reasonable doubt that Davis participated in the single conspiracy alleged in the Indictment.

Watkins testified that he had distributed drugs for Evans until 2006. This testimony is consistent with Meade's assertion that Watkins distributed crack for Evans. From this evidence alone the jury could reasonably conclude that a single conspiracy—one that encompassed both Evans and Watkins—existed.

Davis helped Watkins sell drugs: She brought addicts to Watkins to buy crack and drove Watkins to different locations. LeAnn Berry, Watkins' girlfriend, testified that Davis had frequently purchased drugs from her and Watkins, that Davis "had her own customers[,]" and that Davis had referred customers to Watkins for drugs. (Trial Tr. vol. 2, 79, Oct. 8, 2008.) From these facts the jury could reasonably infer that Davis, either as a low-level distributor or as a driver for a mid-level distributor, knew of and participated in a single conspiracy that situated Evans as an occasional supplier for Watkins.[6]

---

[6] Davis challenges the credibility of both Watkins and Berry. In considering a motion for judgment of acquittal, I must not consider the credibility of witnesses, "'but must assume that the jury resolved all contradictions . . . in favor of the Government.'" *United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998) (quoting *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1402 (4th Cir. 1993)). However, when considering a motion for a new trial based on the sufficiency of the evidence, I am not required to "view the evidence in the light most favorable to the government[,]" and therefore "may evaluate the

Davis also cites the government's inability to conclusively place her as the driver of a suspect in a drug sting operation coordinated by federal law enforcement officers. William Lowe, a confidential informant for the DEA, made a controlled buy from Herschell Davis, Jr. Lowe testified that Robin Davis had driven the car that transported Davis, Jr. to the location where the sale occurred, but Lowe was unable to identify Robin Davis in the courtroom.

Nevertheless, two DEA agents involved with the operation, Mike Baker and Brian Snedeker, testified that Davis had driven the car in question. Moreover, the government's case against Davis did not rest solely on the drug sting operation—the jury could reasonably infer from the testimony of Berry and Watkins that Davis served as a low-level distributor in the conspiracy alleged in the Indictment.

Davis also contends that the jury had insufficient evidence to conclude beyond a reasonable doubt that fifty grams or more of crack were attributable to her.

Without objection, the jury received the following instruction on this element:

> The quantity of a controlled substance involved in the agreement or understanding includes the controlled substances the defendant possessed for personal use or distributed or agreed to distribute.

---

credibility of the witnesses." *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985). I find that, to the extent there were questions as to the government witnesses' credibility, they do not rise to the level appropriate to grant a new trial. *See id.* (stating that a new trial should be granted only "[w]hen the evidence weighs so heavily against the verdict that it would be unjust to enter judgment . . . .").

> The quantity also includes the controlled substances fellow conspirators distributed or agreed to distribute, if you find that those distributions or agreements to distribute were a necessary or natural consequence of the agreement or understanding and were reasonably foreseeable by the defendant.

(Jury Instruction 16.) I find that the jury had substantial evidence to conclude that fifty grams or more of crack were attributable to Davis.

Paul Vaughn testified that Berry had purchased half-ounces and quarter-ounces of crack from him on several occasions.[7] Berry bought crack for Watkins, and Davis helped Watkins distribute it. Berry testified that during a four-month period, Davis had visited her and Watkins several times a day, purchased up to $500 worth of crack, and resold it to her own customers. Evans testified that he had bought ounces and kilograms of either cocaine or crack and had supplied Watkins. Watkins cooked cocaine into crack, which Berry and Davis then helped sell. From this evidence the jury could reasonably attribute fifty grams or more of crack to Davis.

I find that, viewed in the light most favorable to the government, there was substantial evidence to prove beyond a reasonable doubt that there was a single conspiracy in which Davis participated and that more than fifty grams of cocaine base were attributable to her.

---

[7] An ounce equals 28.35 grams.

IV

For the foregoing reasons, it is **ORDERED** as follows:

1. The Motion for New Trial and to Arrest Judgment on behalf of Anthony Eugene Duty is DENIED;

2. The Motion for Judgment of Acquittal and the Motion for New Trial on behalf of Robin Marie Davis are DENIED.

ENTER: January 13, 2009

/s/ JAMES P. JONES
Chief United States District Judge